I'll call case number 234059, Ellis v. Salt Lake City Corporation. Thank you, your honors, and may it please the court. My name is Catherine Nichols, senior city attorney representing the appellants Brian Dale, Carl Lieb, Rusty McMicken, and Salt Lake City. The district court here committed several legal errors in denying qualified immunity to the individual defendants in this case. There are a number of bases for reversal laid out in our briefing, and today I'm hoping to focus on three primary issues. The first is that the district court erred in its application of the legal standards governing plaintiffs' gender discrimination and hostile work environment claims. Second, the district court made several crucial factual findings that were blatantly contradicted by the actual record. And third, the district court relied extensively and sometimes exclusively on a decision by an administrative body called the Civil Service Commission, but that decision constituted inadmissible evidence that should not have been considered. Turning first to plaintiffs' gender discrimination claims for the failure to promote her to two roles in the upper, upper management of the Salt Lake City Fire Department. Counselor, can I just stop you there? Did you raise qualified immunity with regard to gender discrimination below in front of the district court? We did, Your Honor. Qualified immunity, of course, is a two-prong analysis. The first one is, the first prong is the constitutional violation, that initial decision in the first place. We moved for summary judgment on Title VII and Section 1983 for gender discrimination. But did you do it on qualified immunity grounds? You filed summary judgment. I understand that. But did you raise qualified immunity with regard to the discrimination claim? I believe we did. Our entire argument on gender discrimination was a first prong analysis of whether there was a constitutional violation in the first place. This court has said that for that first prong analysis under qualified immunity, it's the same as a Title VII analysis. And we did raise those arguments to the district court. I believe we did not raise a second prong argument at summary judgment on the gender discrimination claim. Okay, thank you. And for those two failure to promote claims for gender discrimination, defendants offered the legitimate nondiscriminatory reason, which was there was a better qualified candidate than plaintiff for those roles. But when determining whether that reason was pretext, the district court committed legal error. It did not follow this court's mandate to even consider whether that proffered reason was, as this court has put it, so full of weaknesses and implausibilities that it was unworthy of belief. This court directs that in a failure to promote claim, that means plaintiff has to show the disparity between her qualifications and the chosen candidate were overwhelming. This court has said that plaintiff has to assure us that the plaintiff is better qualified than the other candidates. That was the legal standard applicable to this claim. But the district court never even analyzed that question. Under the proper standard, though, plaintiff's claims failed. What did the district court do? Didn't it rely on the administrative body's report? It did. It relied on the CSC decision exclusively. And as we've laid out and I'm happy to discuss, we believe that was inadmissible and shouldn't have been considered at all. So I want you to address that as a second point. But assuming for the moment that it was admissible, can you succinctly tell me why, if it was admissible, that didn't resolve pretext in favor of the plaintiff here? Sure. Because what this court has said is that you have to look at the specific proffered reason. And here that was that there was a better qualified candidate. And with this, the district court never did that. It just said, well, there's a CSC decision that comes out, I think it's May or later of 2017. And that shows that a decision that was made in September of 2014 could never have been worthy of credence. But it didn't consider whether plaintiff had actually shown a disparity in qualifications. And this is a problem because what it means, if that was the law, is that an employer could never, the city could never have ever made any adverse employment decision against plaintiff ever again. Imagine she had applied to be the police chief, right? Under the district court's analysis, we wouldn't look to whether a plaintiff was qualified or better qualified to be the police chief. So you're saying it doesn't matter that there is evidence of gender bias in addressing pretext? Are you saying that doesn't matter? No, I'm not saying that, Judge Murphy. That's what the Civil Service Commission said. It didn't though, right? Well, it set aside some denials of promotion, didn't it? Right. But this, and this is important. I'm glad you asked the question. The Civil Service Commission decision was a louder mail type hearing, right? Public employees have a due process right to have notice and a meaningful opportunity to be heard before they're subjected to certain discipline. That's what the CSC Commission did. It did not decide gender discrimination. It's not like the EEOC, right? It's only deciding issues of city policy. And so there isn't any finding, discussion, evidence of gender discrimination in the CSC decision. And so I think that... It seems that I read a different decision than you did. They talked about gender bias, didn't they? No, and I think this really gets to our 403 problem. It's going to be incredibly confusing to the jury because the jury, just like you, is going to believe that the CSC has already decided that there have been issues of gender bias decided. But that was never presented to the CSC because that would have been outside its purview. What the CSC heard was the discipline that was imposed and the basis for it, whether there was substantial evidence to support those policy violations. And the CSC decided there was not substantial evidence and that the demotion was not proportional to the violations if there had there been any. Didn't the CSC also decide essentially that the stated reasons provided by the employer here were simply false? False reasons are enough to establish pretext along with the prima facie case, which establishes the inference of discrimination. I don't need more than falsity. Again, assuming that the CSC decision is admissible, I would agree that that would be enough for the demotion claim to survive. Okay. But I still think that there is an issue with the promotion claims where you're not comparing the disparity. For example, the second promotion, the assistant chief of operations, right? The operations division is the one who sends out the fire engines. The individual who was chosen started his career in fire before plaintiff, and he had spent his nearly entire 25-year career in operations. In contrast, plaintiff, aside from when she was a brand new firefighter, had spent only a few months as a supervisor in operations, and she had never, she herself testified that she had not been in operations, quote, in forever. It cannot be inconsistent or implausible or unworthy of credence to promote the individual who had spent his entire career in operations over somebody who had not been in operations in forever. That was the legal analysis that the court should have undertaken for those failure to promote claims. Ultimately, if you establish a prima facie case, and you have this inference of discrimination, and then you can establish that the reasons given were false, it becomes a jury question. You may well be right that these facts that you're relying on in terms of the denials and promotions are ultimately persuasive, but that would be up to the jury to decide under the McDonnell-Douglas test. We don't, we don't decide that once we've gotten past pretext. But I think the issue is that there was no, there was no decision, no analysis of whether the specific reason, hiring Claire Baldwin to be the operations director, was that unworthy of belief. The district court didn't even ask that question. Well, pretext simply means the reasons given were false, right? Right, but the CSC decision says nothing about the decision to promote Claire Baldwin instead. So the CSC decision doesn't say anything about whether the failures to promote were false. All it talks about is the demotion. Okay, I see your, I see your point there. Appreciate that. I think I'd like to turn to that CSC decision. As I mentioned, it's, it is a very narrow decision. It does not address anything related to gender discrimination, retaliation, the ADA, even though the district court used it for all of those claims. It should not have been admitted. The district court, sua sponte at the hearing, raised the public records exception, but it committed legal error in its ruling on that. It determined that the public records exception, which required, which, under the rule, a record is not admissible under that exception. If the opponent shows just circumstances that indicate a lack of trustworthiness, the city did that. The city on summary judgment presented evidence that the chairperson, the person who authored that opinion, was personal friends with the plaintiff. And importantly, plaintiff never contradicted that evidence, never disputed it. How many members of this commission were there? There were three individuals. And it was a unanimous decision, correct?  So why does it matter if one of them had some familiarity or was a friend of Ms. Ellis? Why does it matter? It matters because it is just a three-person panel. And that personal relationship, particularly with the chairperson and the author of the opinion, it does indicate a lack of trustworthiness. And I do want to point out that the burden is not on the opponent to prove untrustworthiness, right? The reason that this exception exists is because we have the presumption, the rationale, that public officials are going to go about carrying out their duties as regular. That in the majority of instances, the vast majority, the public official has no idea who this member of the public is. Back up. The prejudice, I guess what you call it, is because this member of the commission, the chair of the commission, knew Ms. Ellis and Ms. Ellis had recommended her for a position, I think, which she didn't accept, take, or even apply for as far as I know. Is there anything else in what you presented to the district court to suggest it's unworthy of belief to the extent of being inadmissible? There is testimony also that she was personal friends. I think that email that we submitted, it indicates more than just a professional familiarity. There is a personal familiarity in the language used, particularly by a plaintiff. And again, I think when that- Do you have anything else that undercuts the trustworthiness of this commission's report to the extent it becomes inadmissible? The other piece is, and some of the case law we cited has indicated this, is that when the language itself is consistent, the decision is consistent with that potential bias. What I'm asking for is, what evidence did you present in the summary judgment proceedings, further evidence that undercuts the trustworthiness of this commission report? What you've identified as what we have, the testimony, the email, and the language of it itself. There's nothing else? There is nothing else, and that evidence was undisputed and uncontroverted. The evidence that plaintiff was personal friends was put forth at summary judgment, and plaintiff did not carry her burden to controvert that in any way. We have a test that we've used, I don't think you cited it in your brief, to determine some factors we look at to determine trustworthiness. And I think what you're saying here is, you really didn't focus on any of the factors except one. The other factors being the timeliness of the investigation, which here it occurred fairly timely within a year, correct? The whole hearing? Correct. The investigation and the hearing? Right. Our argument primarily goes to bias and motive, which is one of the factors that the committee has identified. There are other factors that should be balanced, and I think you're agreeing that you're focusing on one factor. Correct. Which is bias. Okay. That's correct, Your Honor. If I may, I'd like to reserve the remainder of my time. Thank you. Sure, thank you. Good morning, Your Honors. May it please the Court, Luke Rosile for the appellee, Martha Ellis. I'm going to try and address both of the issues that were addressed by counsel for the appellant. I'll start, if it's okay with the Court, with the pretext issue. There were four, excuse me, three adverse employment actions as to which the district court found that Ms. Ellis had provided sufficient evidence of a pretext to allow those to go to jury. The failure to promote her to assistant chief in September 24, failure to promote her to operations assistant chief in January 2016, and the demotion in May 2016. And I think a big problem with the appellant's argument here is that it relies on cases lacking the evidence of pretext that were available in this case. I'll give a couple examples of such cases, which are, pardon me, Jaramillo v. Colorado, Judicial Department, 2005 case. There, the only evidence of pretext was that the plaintiff had scored a fraction of a point higher than the other candidate on an objective test, and that her supervisor had initially told her that the other candidate had scored higher. Ford v. Jackson National Life Insurance Company, 45 F. 4th, 1202. Only evidence of pretext was amorphous statistical data, critiques about subjective promotion criteria, and minor differences in qualifications. So in those situations, the qualifications are paramount. Here, the record is replete with evidence by which a jury could reasonably conclude that the stated reasons for those promotions and for the demotion were pretextual. It's not controlling whether the other candidate for the promotions was more qualified, because even if they were, a jury might reasonably find that the reason for the promotion had not to do with the qualifications, but instead with the gender bias. Well, don't we have a more basic problem in that here, which is that the district court relied, as I see it entirely, on the CSC decision in deciding pretext. Essentially, it said that even as to the promotion, or the denial of promotion issues that were not in front of it, I don't think, or were the denial of promotions before it? Before the CSC? Yeah. I believe not. Right. So how could anything that the CSC said about pretext as to the denial of the, as to the demotion issue, which was before it, how could any of that be relevant to the denial of promotion issues? Certainly. So I'll have at least two responses to that, Judge Moritz. The first is that a jury could reasonably find that the evidence of pretext as to the demotion that's reviewed in the CSC also provided motivating factors underlying the failure to promote. But even putting aside the CSC decision, and I want to address that issue as well, there is ample additional evidence of gender bias in this record from which a jury could conclude. There may be, but we don't have a district court decision deciding that. Are you asking us to make that determination, then, in the first instance? Well, I would say certainly this court is free to uphold the district court's decision on any ground supported by the record. Which require us to, on our own, look at the entire record and make a determination? I would think so, yes. As to the pretext. As to that pretextual issue. But if you just... Wouldn't it be better to just send it back to the district court and decide the pretext issue as to the denial of promotion? I think not for a couple reasons, Judge Moritz. One is that the district court made clear throughout its well-reasoned and lengthy decision the volume of gender bias evidence on this record in such a way that it would not serve a judicial economy to send it back for that reason. If we look at the individual defendant's own utterances and own conduct that I'm reluctant even to repeat in this setting because of the coarse vernacular that was used, that is evidence that it could reasonably compel a jury to decide, well, maybe those other candidates were more qualified. That's not why. And that evidence is from the deposition of the plaintiff? Some of it's from the deposition of the plaintiff. Where else? There are also recordings of the individual defendants using this language. Did the district court cite specifically any of that other evidence in its opinion? I didn't do a deep dive into the record just to look what she was referring to. It did, and in my fact section that I put together in the brief, Judge Murphy, I really try to closely mirror the factual findings that the court made below in the outset. Did it cite the evidence that you've referenced, and that is the other statements in the deposition of the plaintiff? Yes, Your Honor, they did. The district court did in the fact section of the memorandum and order on summary judgment. And really what I did in my fact section, I really tried to stick to that strictly. If there was more context I thought was worthwhile, I put that in the footnotes. But everything there from the comment, I'm perfectly willing to go over those comments that are in the record. But she didn't refer to that textually, to that other evidence textually, did she? She just referred to it in citations to the record? She, the district court, the district judge? By textually, there were quotations certainly of this. From the deposition? From the depositions, yes, and it was quoted in the memorandum and order below, including... In the fact section is what you're saying. In the fact section, exactly. Not in the analysis. That's correct. Because it relied on the CSC. Is that what you're saying? What's cited specifically in the analysis section having to do with pretext is the CSC report. That doesn't mean that all of the other facts that are found, or not facts that are found, but facts that are reviewed in the light most favorable to the non-moving party in the fact section of the memorandum and order are just irrelevant or don't count for anything. There were multiple other employees who reported. You know, one was Brittany Blair making reports about McMicken and Dale calling Ellis a very harsh term that is highly indicative of gender bias. Sarah Boe making such reports. Captain Stephen Hoffman making such reports. Van Dongen making such reports. It's not just... All of which are referenced, at least in the reliance on the record in the district court decision. That is correct, yes. And so in my brief, to the extent that my fact section is going beyond what was in the district court, I put that in footnotes to the brief, but really I was struck with what a comprehensive recitation of the relevant evidence the district court mustered in that fact section set out at the beginning of the memorandum and order. Did you also, did you argue below that separate and apart from the CSC's determination that there was sufficient evidence in the record to establish pretext? I don't think such a... Separate and apart. I don't think such a finding was made below. No, I didn't ask about the finding. Did you argue it? I don't believe that argument was raised that even if you disregard the CSC decision, still we get a jury trial. I'm not aware. I could certainly look at the record below. I didn't have the foresight to do so ahead of today's argument, and I can supplement a letter to alert the court if the panel would like me to do that. But I would like to speak to the CSC decision. I'm afraid I haven't answered your question adequately, Judge Moritz. That's all right. No, you have. But so as to the CSC decision, first of all, its admissibility is beyond this court's jurisdiction. I mean, the case law is very clear on this. It's Malik v. Arapahoe County Department of Social Services. I cite it in the brief, 191 F. 3rd, 1306. Question of whether a district court erred when it accepted and relied upon inadmissible hearsay evidence in the denial of the motion for summary judgment is not inextricably intertwined with the district court's finding that the individual defendants violated... But that relates to pendant jurisdiction, doesn't it? It doesn't relate to the merits of the underlying claim. Isn't that... That's right. So first... That's a pendant jurisdiction case. That's right. So before... Please.  All right. If the two prongs on qualified immunity is there's a violation and there's clearly established law, as to the first, if there's a violation, that is a fact-bound question, correct? In a sense, I mean, I guess I would push back against that characterization. You have to have evidence of what happened before you can go from what happened to is that a constitutional violation? That's right. And the evidence must be viewed in the light most favorable to the non-moving party. And so, for example, when Lieb says you're not humble enough and viewing that in the light most favorable to the party, that's a gendered comment. So that would be an example of viewing... Even though we have to be very, very reluctant of getting into the weeds on the evidence on qualified immunity on appeal... You can't ignore it. If you still have to at least dip your toe in it, don't you? To determine whether there is any evidence. If, in fact, there is no evidence that would support a constitutional violation, then the defendants win on qualified immunity. Isn't that correct? That's correct. And here, of course, there is... So you have to dip into it. What if the only evidence that is relied upon by the district court, relied upon by the district court, not in the record, but relied upon the district court, the only evidence is, as a matter of law, inadmissible, then the defendants prevail, don't they? This court, at the appellate stage, Your Honor, in order to issue that decision, this court would have to overrule Malik. Right now, this court is passing upon the admissibility of the CFC report. I think Malik is the inextricably involved aspect of appendant jurisdiction. So give me something else. Well, I don't know any other way to try and shoehorn the admissibility question into a qualified immunity appeal. What if, as a matter of law, we look at this and that commission report is inadmissible? Isn't that important in this case? Certainly. But under Malik, it's beyond this court's jurisdiction to pass on the admissibility. I mean, Malik specifically wrote the district court... So, in other words, if somebody has a case that is... And qualified immunity is denied on basis of the evidence and it comes up to us. And we look at the record and there is no admissible evidence to support the alleged facts underlying a constitutional violation. That's a reversal of denial of qualified immunity, isn't it? Well, may I make three remarks in response to that, Judge Murphy? Oh, you'd make four. I appreciate the court's intelligence. Thank you. So first is that would be grounds for reversal on direct appeal, perhaps, if they object to the evidence below and it's admitted and that was erroneous. But on an interlocutory appeal on qualified immunity, if the judge below relies on inadmissible evidence, under Malik, it's not before this court. But I don't want to just rely on that jurisdictional argument. I want to get to the substance of this argument as well. Because the only objection that was raised below and that's being raised now with respect to this is trustworthiness. And so what do the cases say on trustworthiness? There's a case, Coleman v. Home Depot, is a 2002 case out of the Third Circuit. None of the aforementioned trustworthiness considerations have been invoked in this case. And I think the case law is clear that the district court judge is in the first and best position to evaluate trustworthiness. All we have on this record on trustworthiness is this email that allegedly, if looked in the light most favorable to the moving party, shows some degree of familiarity. That's the wrong light to look at it. And then we've got self-serving testimony from the defendant McMicken. This is at appendix 5, page 1299, where he claims that the plaintiff was friends with one of the commission members. That is not enough to make it as a matter of law an abuse of discretion for the court below to have found that the trustworthiness concerns go to weight rather than admissibility. And the defendants have not here raised any other objections to the admissibility of that. Below, they made no 403 objection at all. They made a very vague blanket hearsay objection. Did not engage the 8038 public records analysis at all. And so even on the substance, the CSC report comes in. And even if it doesn't come in, the language that I'm reluctant to repeat in this setting that the record is replete with, and that's cited in the facts section of the memorandum in order, and that's cited in our brief, from all three of the defendants, the humility comment from Lieb, comments about sanitary products being thrown at people, comments just absolutely abhorrent comments in any setting, especially in a paramilitary setting where the expectations of professionalism are at an apex. Is that your third reason? That would be the third response. Yes. Thank you, Judge Murphy. I failed to come up with a fourth response.  Can you help me write a rule for the district court on determining the admissibility under 803 when trustworthiness is a threshold? When did you decide it's good enough for government work or you decide it is so untrustworthy that I have to keep it out? The way that I would conceive of that rule is it's a preliminary determination for the judge to make. The district judge would have discretion in determining whether or not to take evidence on that issue of trustworthiness before putting it through to the jury. And you might draw an analogy to a gatekeeping function on reliability when it comes to expert evidence, that if there's a real concern about trustworthiness, the district court would have discretion to take evidence on that. I have a quick question if I can interrupt. On the sexual harassment claim, did the district court consider for the various individual defendants their individual liability or did it group them together? May I have a moment to answer that question, Judge Moritz? It considered them individually, but in the context in which they were operating, right? There's the meeting where Dale says, where Cook says, I operate as one with Lieb and Dale. There's the triumvirate finding that's well-founded. And so that's the basis for your argument that somehow the district court did make individual determinations in it of the sexual harassment claim? I'd say if the court will indulge me, I'd say there's two basis. One is the individual remarks and comments that each of the individual defendants made and the individual adverse employment actions that each of the defendants made, which are reviewed at length in the memorandum. But is there any 10th Circuit authority that permits us to consider those discrete acts in addition to the other evidence of? Yes, there is. What is that? And so it's the cases on aggregation. One is Hicks versus Gates Rubber Company, 833 F 2nd, 1406. District court was free to, quote, aggregate evidence of one type of hostility with evidence of another type of hostility. That case was two types of hostility. It didn't involve discrete acts. And the other one that I would rely on here is a case out of the District of Colorado from 2023, Porter versus Regents of the University of Colorado, where they aggregated allegations predicated on gender-based hostility and allegations predicated on retaliation for protected activity to find actionable claim. Thank you, counsel. Thank you. If there's no further questions, I'll rest on the briefs. Thank you. And let's add a minute to her 45 seconds or whatever she had left, or bottle. Thank you. Thank you, your honors. I wanted to touch on that last question about, well, maybe the second to last question about the hostile work environment here and the discrete acts piece. Here, the district court found when it aggregated the conduct of all three individual defendants, put that all together, all relevant findings, this is its conclusion, quote, the acts detailed by Ellis are neither numerous nor individually severe, end quote. That means that putting together the conduct, which itself is improper, the district court agreed that plaintiff did not show a constitutional violation. It was error for the district court to let that hostile work environment claim survive as a result. And what about Lee? Did the district court make individual findings on Lee? It did. So for Lee, the findings are that he engaged in three incidents of sexual harassment. Right off the bat, three is not significant. The primary one is this humility comment, right? The district court relied on, I think, plaintiff's testimony about the comment. But the comment itself is not an equal protection violation. When an individual expects the same quality out of male and female candidates, this is what he said for me. The big factor for me is he, the selected candidate, had some humility. He recognized his weaknesses. He spoke about that. Now, I didn't hear a lot of that in the interview with you. You had an opportunity to speak to it. That is the big sexual harassment from Lee. That's it right there. But that finding is blatantly contradicted by the record that he made a sexist comment. We would ask that you reverse. Thank you, your honors. Thank you. Both counsel, your arguments have been helpful. The case will be submitted and counsel are excused.